**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MARGARET M.,[1] | : | Case No. 3:20-cv-240 |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Margaret M. brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #8).

**I.     Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for benefits on October 26, 2016, alleging disability due to several impairments, including bipolar disorder, Crohn's Disease, joint pain, rashes, depression, sacroiliitis, anxiety, limited education, arthritis, and ankylosing spondylitis. (Doc. #8, *PageID* #280). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Stuart Adkins. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful employment since October 26, 2016, the application date. |
| Step 2: | She has the severe impairments of Crohn's Disease; degenerative disc disease of the lumbar spine; osteoarthritis; bipolar disorder/depression; and anxiety disorder. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) would alternate between sitting and standing every 30 minutes while at the workstation; (2) can never climb ladders, ropes and scaffolds; (3) can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; ([4]) should avoid unprotected heights, dangerous machinery, and commercial driving; ([5]) can perform simple, routine tasks but not at a production-rate pace and not with strict production standards; ([6]) can have occasional interaction with supervisors, co-workers and the general public; ([7]) no jobs requiring teamwork or tandem tasks; and ([8]) can tolerate occasional changes to a routine work setting defined as 1-2 per week." |
| | She has no past relevant work. |
| Step 5: | She could perform a significant number of jobs that exist in the national economy. |

(Doc. #8-2, *PageID* #s 34-45). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 45.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 35-37, 40-43), Plaintiff's Statement of Errors (Doc. #9), and the Commissioner's Memorandum in Opposition (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

In her Statement of Errors, Plaintiff raises three challenges to the ALJ's decision. (Doc. # 9, *PageID* #s 1856-63). Specifically, Plaintiff contends that ALJ Adkins (1) incorrectly identified severe impairments under prong two of the sequential process; (2) failed to follow the treating physician rule and give deferential weight to Plaintiff's treating physicians' opinions; and (3) failed to fully consider essential vocational expert testimony. *Id*. According to Plaintiff, each of these reasons support a finding that this matter should be remanded. *Id*. In response, the Commissioner maintains that substantial evidence supports the ALJ's decision and should, therefore, be affirmed. (Doc. #10, *PageID* #s 1868-87).

### A. Plaintiff's Severe Impairments

In her first statement of error, Plaintiff contends that the ALJ incorrectly identified severe impairments under step two of the sequential process. (Doc.# 9, *PageID* #1856). In response, the Commissioner points out that ALJ Adkins did, in fact, find that Plaintiff had severe mental health impairments, including bipolar disorder, depression, and anxiety disorder and provided significant mental limitations in Plaintiff's residual functional capacity (RFC) that reasonably accounted for these restrictions. (Doc. #10, *PageID* #s 1868-70).

At step two of the five-step sequential evaluation process, the ALJ considers the "medical severity of [the applicant's] impairments." 20 C.F.R. § 416.920(a)(4). "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* at § 416.921(b).

The Sixth Circuit has construed step two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be

considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted). The Court explained, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis." *Id.* (citations omitted). However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir. 2001) (internal quotations and citations omitted).

Here, Plaintiff alleges that "ALJ Adkins incorrectly concluded that [her] mental health conditions were not severe." (Doc. #9, *PageID* #1856). Curiously, in making this argument, Plaintiff fails to identify the specific mental health disorder she believes the ALJ did not properly consider. Instead, in support of her position, Plaintiff details the medical opinions from Courtney Zeune, Psy.D, Irma Johnston, Psy.D., and Franklin Halley, M.D., and how each concluded that she had psychological limitations as a result of her bipolar and anxiety. *Id*. at 1857-58. Elsewhere in her statement of errors, Plaintiff limits her discussion of her mental health impairments to "bipolar disorder, depression, and anxiety." *Id*. at 1858. (citing Doc. #8-6, 351).

Notably, however, ALJ Adkins identified Plaintiff's bipolar disorder, depression, and anxiety disorder all as severe mental impairments. (Doc. #8-2, *PageID* #34). He based his decision on the opinions of the two record reviewing psychologists, Courtney Zeune, Psy.D. and Irma Johnston, both of which he found to carry great weight. *Id*. at 35. In addition to finding these mental impairments to be severe, ALJ Adkins also incorporated mental functioning limitations in Plaintiff's RFC. *Id*. at 39. Specifically, he found that Plaintiff was limited to performing "simple,

5

routine tasks but not at a production rate pace and not with strict production standards." *Id*. He also concluded that while Plaintiff could have "occasional interaction with supervisors, co-workers and the general public[,]" she would be unable to perform "jobs requiring teamwork or tandem tasks" and could only "tolerate occasional changes to a routine work setting defined as 1-2 per week." *Id*.

Thus, to the extent that Plaintiff believes ALJ Adkins erred by not considering her bipolar disorder, depression, and anxiety disorder to be severe impairments, she is simply mistaken. These mental impairments were identified as severe impairments by the ALJ and led to mental functioning limitations in her RFC. Further, to the extent that Plaintiff was referring to mental impairments other than those found to be severe by the ALJ, her argument is without merit as she has failed to specifically identify these impairments, let alone present evidence as to their existence and accompanying limitations. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"). Accordingly, Plaintiff's first statement of error is overruled.

### B. Evaluation of Medical Opinions

In her second statement of error, Plaintiff contends that ALJ Adkins reversibly erred in evaluating the opinions of her treating medical providers, Franklin M. Halley, M.D. and Angela Keeton, CNP. (Doc. #9, *PageID#* 1858-61). According to Plaintiff, Dr. Halley and CNP Keeton "provided restrictions that precluded [Plaintiff] from full time employment," and that ALJ Adkins's reasoning in discounting these opinions was not supported by substantial evidence. *Id*. at 1860.

Social Security Regulations recognize several different types of "acceptable" medical sources: treating physicians, non-treating, yet examining physicians, and non-treating, record-reviewing physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R.§ 416.902. Generally, ALJs "give more weight to the opinion from… treating sources." 20 C.F.R. § 416.927. Indeed, when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[,]" the ALJ is required to place controlling weight on the treating source's opinion.[2] *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

However, if the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

Here, Plaintiff alleges that ALJ Adkins failed to follow the treating physician rule when weighing the opinion of Franklin M. Halley, M.D. (Doc. #9, *PageID* #1858). Dr. Halley submitted an assessment of Plaintiff's mental impairments and capabilities in January 2019. (Doc. #8-13, *PageID* #s 1696- 1708). In his assessment, Dr. Halley indicated that he had been treating Plaintiff for bipolar disorder and unspecified anxiety disorder since September 2017, though Plaintiff had many years of treatment with other providers. *Id*. at 1696. He indicated that Plaintiff was currently

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's applications were filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

taking several medications for her mental disorder and that she did not have a history of alcohol or drug abuse. *Id*. Dr. Halley opined that Plaintiff would have intermittent episodes of depressed or irritable mood, which was "often associated with life/family stress." *Id*. at 1697.

Dr. Halley also checked boxes of Plaintiff's clinical abnormalities, including sleep disturbance, decreased energy, feelings of guilt or worthlessness, suicidal thoughts or acts, hyperactivity, pressure of speech, and decreased need for sleep. *Id*. at 1697-1700. Here, Dr. Halley noted that Plaintiff's suicidal thoughts or acts were evidenced by her last hospitalizations over a year prior in 2016 and 2017. *Id*. at 1699. Apart from this note and a note that Plaintiff's hyperactivity was evidenced by excessive cleaning all night long, Dr. Halley did not provide any further information regarding the nature, frequency, or duration of these clinical abnormalities. *See id*. at 1697-1700. Additionally, Dr. Halley checked a box indicating that he believed Plaintiff had "[m]arked difficulties in maintaining concentration, persistence, or pace[,]" but failed to specify the source of this information or any examples. *Id*. at 1701. He did, however, explain that Plaintiff's repeated episodes of decompensation were evidenced by several hospitalizations resulting from her bipolar mood. *Id*. In response to a question asking whether Plaintiff has "a history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, but with symptoms or signs currently attenuated by medication or psychosocial support[,]" Dr. Halley checked "Yes" but failed to provide any supporting evidence or explanation. *Id*.

Finally, Dr. Halley also completed a checklist form about certain adaptive functioning limitations where he appeared to indicate the presence of limitations in 17 different areas. *Id*. at 1706. Once again, however, there is no key or scale to explain the nature, frequency, or duration

of the limitations, let alone any explanation regarding how the presence of these symptoms affect Plaintiff's daily life. *See id*.

Contrary to Plaintiff's contentions, the ALJ reasonably determined that Dr. Halley's opinion was not entitled to controlling weight. In reviewing Dr. Halley's opinion, ALJ Adkins acknowledged that he was an acceptable treating source but found that he could not give his opinion controlling or deferential weight. (Doc. #8, *PageID* # 37). ALJ Adkins pointed out that while Dr. Halley reviewed Plaintiff's symptoms and provided a checklist for her functions, he failed to provide a corresponding scale or key that explained the degree of functionality Plaintiff retained. *Id*. In other words, not only was the assessment unsupported by clinical findings, but also provided little value to the ALJ in trying to incorporate Dr. Halley's opinion into Plaintiff's RFC. *Id*. An ALJ may properly reject a vague opinion that does not provide any specific functional limitations. *See Quisenberry v. Comm'r of Soc. Sec.,* 757 F. App'x 422, 434 (6th Cir. 2018). Further, ALJ Adkins pointed out that Plaintiff last had a depressive episode in 2017, which was consistent with the treatment notes indicating her improved condition following therapy. *Id*.

Again, a treating physician is only entitled to controlling weight if his opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Gayheart*, 710 F.3d at 376. Here, ALJ Adkins reasonably determined that Dr. Halley's opinion was not supported by clinical findings as he failed to provide any support or explanation regarding the symptoms and limitations he believed Plaintiff to exhibit. Accordingly, the ALJ's decision to attribute little weight to Dr. Halley's opinion is supported by substantial evidence.

Plaintiff also challenges the ALJ's evaluation of the opinion by Angela Keeton, a certified nurse practitioner. Nurse Keeton submitted an opinion regarding Plaintiff's physical functioning in December 2018. (Doc. #8-13, *PageID* #s 1678-81). In her assessment, Nurse Keeton specified that Plaintiff was diagnosed with depression, anxiety, ankylosing spondylitis, Crohn's Disease, bipolar disorder, and hypothyroidism but opined that only her Crohn's Disease required ongoing treatment. *See id*. at 1678. Nurse Keeton also completed a checklist form where she indicated that Plaintiff exhibited symptoms, including abdominal pain and cramping, weight loss, loss of appetite, bowel obstruction, abdominal distention, nausea, fatigue, and mucus in stool. *Id*. In response to a question asking for additional detail, such as the nature, frequency, precipitating factors, and severity of Plaintiff's pain, Nurse Keeton indicated that the "pain is chronic" but to "see GI notes for more detail." *Id*.

With regard to Plaintiff's physical functioning, Nurse Keeton indicated that she is capable of sitting for a period of 30 minutes to an hour at a time; standing for a period of 15 minutes at a time; and sitting, standing, and walking for a total of less than in 2 hours in an 8-hour work day. *Id*. at 1679. She indicated that Plaintiff would need a job that allows her to shift positions at will and additional restroom breaks due to abdominal pain, nausea, vomiting, and diarrhea. *Id*. at 1679-80. As to whether Plaintiff would need to take unscheduled restroom breaks throughout the day, Nurse Keeton indicated "Yes" but again referred to the "GI notes" as she was "unable to determine" how often or how long Plaintiff would need these breaks. *Id*. at 1680.

Nurse Keeton opined that Plaintiff is capable of lifting up to 20 pounds, could rarely climb ladders, and occasionally twist, stoop, crouch/squat, and climb stairs. *Id*. at 1681. She further noted that Plaintiff would be off-task 25% of the day "depending on exacerbation of symptoms" and

10

would be "incapable of even 'low stress' work" as it would "exacerbate mental [and] physical symptoms." *Id*. Finally, Nurse Keeton checked a box stating that Plaintiff would be absent "[m]ore than four days per week" as a result of her impairments. *Id*. at 1681.

ALJ Adkins decision to give only "partial weight" to Nurse Keeton's opinion is supported by substantial evidence. ALJ Adkins acknowledged the treating relationship between Nurse Keeton and Plaintiff and correctly concluded that Nurse Keeton was not an "acceptable" medical source under the regulations. (Doc. #8, *PageID* #40); *see also* 20 C.F.R. § 416.913. He also considered the multiple inconsistencies between the severity of Nurse Keeton's opined limitations and the treatment records, including Plaintiff's inability to produce a stool sample at an evaluation, her physicians' documented suspicions regarding her Crohn's Disease diagnosis, the lack of positive objective testing confirming her Crohn's Disease diagnosis, and the characterization of her abdominal pain as being "functional." *Id*. at 40-41. Additionally, the ALJ also properly discounted Nurse Keeton's opinion that Plaintiff was "incapable of even low stress work" as it speaks to the ultimate legal issue reserved for the ALJ. *See Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985)) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician."); *see also* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will find you disabled.").

Finally, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by her impairments" through step four of the sequential evaluation process. *Jones,* 336 F.3d at 474. Accordingly, it is Plaintiff's burden to prove that she has a more restrictive RFC than that assessed

11

by the ALJ. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)). Plaintiff, however, does not indicate through citations to the record evidence or through factual or legal analysis what functional limitations caused by her Crohn's Disease, bipolar disorder, depression, and anxiety disorder are not already accounted for in the RFC.

Accordingly, the ALJ's failure to impose more restrictive limitations to account for these diagnoses is not unreasonable. *See Kocher v. Comm'r of Soc. Sec.*, No. 2:14-cv-2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015) (Kemp, M.J.), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (Smith, D.J.) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005)) ("[W]hen 'there is no evidence in the record, of any functional limitations as a result of [an impairment] that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Townsend v. Astrue*, No. 6:12-CV-00261-SI, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition). Based on the foregoing, Plaintiff has failed to meet her burden of proving that her Crohn's Disease, bipolar disorder, depression, and anxiety disorder require a more restrictive RFC than that assessed by the ALJ. Thus, Plaintiff's second statement of error is also overruled.

### C. Vocational Expert Testimony

Finally, in her last statement of error, Plaintiff alleges that ALJ Adkins failed to "fully consider essential vocational expert testimony finding [Plaintiff] to have functional capacity to

perform sedentary work." (Doc. #9, *PageID* #s 1861-63). According to Plaintiff, ALJ Adkins erred by failing to consider the vocational expert's testimony on off-task behavior when finding that Plaintiff would be able to perform light work. *Id*. at 1862. In response, the Commissioner points out that the ALJ's hypothetical question to the vocational expert properly excluded limitations that were not credibly supported by the evidence. (Doc. #10, *PageID* #s 1886-87).

During the hearing, ALJ Adkins posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #8-2, *PageID* #s 112-15). In the first two hypotheticals posed by the ALJ, the vocational expert was able to identify at least 265,000 jobs that would be available in the national economy for an individual with the specified limitations. *Id*. at 112-13. In the next three hypotheticals, the vocational expert was asked about additional hypothetical limitations, including the tolerance for off-task behavior and absenteeism. *Id*. at 113-14. In response, the vocational expert indicated that off-task behavior exceeding 15 percent would be work-preclusive. *Id*. at 113-14. Similarly, the vocational expert testified that Plaintiff would not be able to maintain gainful employment if she were regularly absent three days every month or required two additional 15-minute breaks throughout the day. *Id*.

In assessing Plaintiff's RFC, ALJ Adkins ultimately decided not to include any of the final three hypothetical limitations. *See id*. at 39. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as she would have been found disabled had these limitations been included. (Doc. #9, *PageID* #s 1861-63).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL

374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 416.920(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted).

As previously discussed, substantial evidence supports ALJ Adkins' assessment of Plaintiff's RFC. ALJ Adkins explained the history and records pertaining to Plaintiff's mental and physical impairments. (Doc. #8-2, *PageID* #s 34-43). In doing so, he found that the impairments complained-of in Plaintiff's brief—*i.e.*, Crohn's Disease, bipolar disorder, depression, and anxiety disorder—to all constitute severe impairments and included corresponding functional limitations in her RFC as a result. *Id*. These limitations were based on his review of the record and the medical opinions. *Id*.

Furthermore, the administrative record does not contain any credible medical opinion detailing how these impairments impact Plaintiff's functioning to the point that she would be off-task more than 15 percent of the day, be regularly absent three days every month, or require an

additional two 15-minute breaks every day. While Nurse Keeton opined that Plaintiff would be off-task 25% of the day she admitted that this would "depend[] on exacerbation of [her] symptoms." Similarly, in checking the box stating that Plaintiff would be absent "[m]ore than four days per week[,]" Nurse Keeton failed to explain the basis for this opinion or cite to any clinical findings that would support this finding. Instead, she routinely stated that the examiner should simply refer to the "GI notes" as she was "unable to determine" information related to the severity of Plaintiff's symptoms and limitations. Moreover, as previously discussed, the ALJ's decision to discount Nurse Keeton's opinion is supported by substantial evidence as it was not supported by clinical findings and inconsistent with other evidence in the record.

Additionally, Plaintiff's reliance on her subjective complaints to support including these limitations in her RFC is unavailing. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

Here, substantial evidence exists to support ALJ Adkins' decision to not include those limitations in the RFC. For example, in response to Plaintiff's complaints regarding her need to use the restroom 10 to 15 times a day, ALJ Adkins pointed out several discrepancies between her

15

complaints and the evidence in her medical file, including the lack of positive biopsy, imaging or labs supporting Plaintiff's Crohn's Disease diagnosis. (Doc. #8-2, *PageID* #42) (citing Doc. #8-11, *PageID* #1178; Doc. #8-12, *PageID* #s 1347, 1372, 1377, 1381; Doc. #8-13, *PageID* #s 1713-14). He noted that Plaintiff's physicians had also documented their own suspicions of her diagnosis, noting that she was unable to produce a stool sample at her examination and exhibited "drug seeking" and "malinger[ing]" behavior. *Id*. (citing Doc. #8-10, *PageID* #1051; Doc. #8-12, *PageID* #1381; Doc. #8-13, *PageID* #s 1713-14). On one occasion, Plaintiff went to the emergency department requesting pain medication for her abdominal pain and was observed "ambulat[ing] multiple times in the emergency department without the appearance of acute distress." *Id*. at 43. (citing Doc. #8-12; *PageID* #1334). Once Plaintiff was informed that she would not be prescribed any pain medication, she requested to be discharged. *Id*. On a different occasion, Plaintiff was witnessed twice throwing herself on the emergency room floor and reporting that she had fainted and hit her head. *Id*. (citing Doc. #8-13, *PageID* #s 1793, 1796, 1803). Plaintiff's hospital files also indicated that she would ask multiple sources for pain medication and frequently change her story during her hospital stay. *Id*. (citing Doc. #8-13, *PageID* #s 1713-14). In short, ALJ Adkins carefully considered the totality of the evidence, applied the proper standards, and clearly explained his credibility findings. In doing so, he did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, he simply found that they did not support the additional hypothetical limitations advocated by Plaintiff. Under these circumstances, this Court is without authority to disturb that finding.

For these reasons, Plaintiff's final statement of error is also not well taken.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the Court's docket.

January 13, 2022                                           *s/Peter B. Silvain, Jr.*
                                                                                Peter B. Silvain, Jr.
                                                                                United States Magistrate Judge